We'll hear argument next this morning in Case 10-5258, McNeill v. United States. Mr. Gordon. Mr. Chief Justice, and may it please the Court, when this Court construes a statute, the words of the statute matter, the purpose of the statute matters, and the results produced by that construction matter. When Congress defined in the Armed Career Criminal Act a serious drug offense as one for which a State penalty of 10 years or more is prescribed by law, it meant for Federal courts to look to the law presently in effect in that State. This is the most natural reading of the statute, and words matter. It is also consistent with ACCA's purpose, which is to punish the Federal firearms offense. And if we are going to punish something else. Sotomayor, I have just one problem, which is, under your theory, I understand it, if a State increases a penalty, makes a what would have been a penalty for a misdemeanor, now a felony, then that defendant is a career criminal by your logic. So the person who thought that at the time they committed the crime they were committing a low-level crime is now a felon. Is that your theory of the case? If a State were to increase a penalty, say from originally it was 5 years, increased it to 10 years, the defendant was convicted at a time when it was 5 years, if the defendant possessed a firearm, yes, he would be facing that penalty. Sotomayor, what logic do you think there is in that, why Congress would want to punish someone now for a criminal activity that they thought was lesser, and the State thought was lesser at an earlier time, less reprehensible? Because the purpose of the Armed Career Criminal Act is not to enhance a sentence because of the prior conviction, it is because the Federal firearm offense at the time it was committed is more serious based on its repetitive nature, as this Court has said. So therefore, looking to when the defendant commits the offense, what his status is at that time under the law, we think makes sense, and is consonant with the purpose of what ACCA is trying to do. ACCA is not trying to punish the State offense at the time. And of course, the converse, Your Honor, is that by adopting the government's reading, is individuals who at a time committed an offense when a State at that time viewed an offense as more serious, but now has changed its view of the offense, does not view it as being as serious, that person also would receive a 15-year mandatory minimum sentence. Ginsburg. Mr. Gordon, this State does regard it, it does prescribe the 10 years for this defendant because it's made the change not retroactive. So a maximum of 10 years is prescribed for Mr. McNeil and all others who committed the offense prior to the change in law. So it is the State's current position that for this defendant, the maximum is 10 years. Yes, Justice Ginsburg, that's correct. Where we fundamentally disagree with the government and with the Fourth Circuit is on the significance of retroactivity. The statute requires or the statute directs us to look at the penalty that is prescribed for the offense, the offense in its generic context. It is not about what the circumstances of the defendant were that produced the particular conviction for him. No one who commits the trafficking offenses that Mr. McNeil committed today is going to be facing a 10-year sentence. It's not going to happen to anyone who commits the offense from today forward. And we think that is where the statute directs us to look. What is the penalty for the generic offense? Suppose what would happen in this situation? A defendant is convicted under a State statute that says that anybody who sells between 1 ounce and 5 ounces of a particular controlled substance is guilty of a felony and may be punished by imprisonment for a certain amount of time. And then the State repeals that provision altogether and acts a new provision that says anybody who sells between 1 ounce and 8 ounces is punishable by a certain penalty. And now the question comes up, what penalty does the Court look at with respect to the earlier offense that no longer exists for which the defendant was convicted? There are two possible answers, Justice Alito. First, the Court could look to what the offense is now, could look back to what the defendant did consistent with Shepard and so forth, and see if the defendant's conviction contains the element of the present — the elements that apply to the present offense. If the Court could not do that, then the conviction would count for purposes of the defendant's criminal history. It would not count as an act of predicate, and the district court would then be limited to a 10-year sentence as opposed to a 15-to-life sentence. So consistent with its purpose, we think that the statute should be read as speaking to the time not of the State conviction, not of the State sentence. Ginsburg. Mr. Gordon, is this — is this essentially an academic question? Because this district judge said that he would impose the same sentence as a variance, even if he couldn't do it under the guidelines, even if it were an incorrect calculation. He said, this criminal record is violent and astonishing. Essentially, I'm going to throw the book at him, and I'm going to do it through a variance if no — if there's no other way. So isn't that — I mean, isn't this an exercise, essentially an academic exercise, if your client would end up in the same place? Well, Justice Ginsburg, it may be an academic exercise for Mr. McNeil or for the Mr. McNeils of the world. The judge would, if this Court were to agree with us, the judge could impose consecutive sentences on a remand and still achieve the same sentence, yes. For someone whose only offense, however, is a 922G conviction, then it makes a huge difference, because rather than looking at a 15-year mandatory minimum penalty, the defendant would be looking at no more than 10 years. So the judge is — it would be significantly cabined in that sense. And the other — with respect to Mr. McNeils of the world, the judge on a remand is still going to be required to calculate the guidelines correctly. And so if the guidelines change, if they go down in this case, for the judge to achieve a 300-month sentence, the judge is going to have to state reasons again and arguably more significant reasons to achieve that same level if he's working from a lower guideline range. Kagan. Mr. Gordon, there are other provisions in ACCA which seem to use the present tense in circumstances where it doesn't seem as though the statute truly means the present tense. So a violent felony is one that has as an element the use of physical force, is burglary arson or extortion, involves use of explosives, and so on and so forth. But we would not look in interpreting that provision to the present day, would we? Justice Kagan, I think you would in this sense. For the violent felony provision, there is a generic offense. Let's take burglary. There is this existing thing right now called burglary. What a Taylor analysis does is it looks backward to what the defendant did. It looks to see what those elements are. It takes those elements, it brings it forward, and if those elements fit in the box, then what he did is a burglary. If it does not, then it is not a burglary. The so that's my essential answer to that. Scalia Well, why is the present tense inadequate for the government's position in this case? Once it is conceded that the North Carolina law is not retroactive, the law reducing the number of years, it is the case that what is the maximum term of imprisonment for the offense that he committed, how many years ago was it, whatever? Early 90s, Your Honor, yes. 91. Scalia What is the maximum punishment for that offense, which occurred at that time, is a longer period. Why is why? I don't see why your argument requires us to ask what would be the term if he had committed the offense at a later date. The maximum term for his offense when he committed it is those years, because the State did not retroactively reduce his sentence. That's correct. For Mr. McNeil, the penalty for him, he would be facing an exposure of 10 years. The penalty, however, that everyone else, the penalty that is currently prescribed in North Carolina for someone who commits McNeil's offenses is not 10 years. And depending on where they fall in the prior record level, their maximum sentence is considerably less than 10 years. So we do not think it's consonant with the statute to look to the circumstances of the individual defendant. Congress easily could have said, for which a penalty of 10 years or more is prescribed for the defendant. We think that would be a different case. Scalia It's for anybody who committed it prior to the amendment of the statute. Anybody that committed it, then, it is an offense involving manufacturing disfavor or presenting with intent to manufacture a disfavor to control, for which a maximum term of imprisonment of 10 years or more is prescribed by law. It is prescribed by law for any of those offenses that occurred between whenever that old statute was enacted and whenever the statute was amended. It is prescribed only if you take the offense out of the category of a generic offense. It is not prescribed for the generic offense. It is prescribed for particular defendants who committed the offense at a certain point in time. And, Justice Scalia, I think it raises a rather fundamental question, which is, if we really are punishing the Federal firearm offense, and we are not punishing the defendant for the prior conviction, and we have two individuals who commit a 922G offense, and they have similar records, but they sustained their State convictions on different days, do we want to treat them the same for purposes of where they — of the Federal offense, or do we want to distinguish them on the basis of the State convictions? Do we want the State convictions to really throw out? Yes, Your Honor. Roberts. What if the State change is to abolish the offense altogether? Do we do — do we not have any predicate offense for the defendant who committed the crime prior to the abolition of the State offense? Your Honor, yes. If, as I said earlier, you could not determine from the prior conviction whether there is any present State offense that might be called something different, but that has those drug trafficking elements that the statute requires, if you cannot determine, you know, from Shepard-approved documents and so forth, yes, we think for purposes of the armed career criminal enhancement only, that that would disappear. That's correct. I do want to stress, because I think it's important to stress. Scalia. Actually, that's correct. I mean, and you're happy with that. The person committed a felony when it was a felony, and the State later no longer makes it a felony, and it isn't counted for purposes of the Armed Career Criminal Act. Only for purposes of the Armed Career Criminal Act, yes. It certainly would count as a prior conviction. It would count as a prior conviction, for example, for 922G purposes. This person could still be prosecuted for being a felon in possession, yes. So we do not — our reading is not opening the jailhouse door for anybody. They are still facing a hefty 10-year sentence. The question is, in a statute that defers to the judgment of the States to determine seriousness, are we going to defer to the current State assessment of what seriousness is, or are we going to look back to repealed and discarded judgments? Well, but it strikes me that there's really no change in the State view of how serious it is. It was just an overall change in how they're going to look at sentencing. Under the prior regime, you're sentenced to a particular term, but in fact you serve a lot less. With the new truth in sentencing, you're sentenced to what is a much — a smaller term, but you, in fact, are going to serve the whole thing. At the end of the day, there's no real change in how they view the seriousness of the offense. That's correct, Mr. Chief Justice. Arguably, yes. But for purposes of the serious drug offense definition, what we have to use is the penalty. We have to look at the penalty as the State's proxy, if you will, for seriousness. Are we looking at it because we want the States to determine the Federal sentence, or are we looking at it because we evaluate the evil of the particular defendant on the basis of how much of a crime he was willing to commit? And so long as it was a serious felony when he committed it, this is a bad actor. I don't care if the State changes its view. At the time, he was willing to commit a felony that put him in jail for 10 years. And that's what we're looking to, it seems to me. How bad an apple is this fellow that we're talking about putting away? And that doesn't change simply because the State decides in the future that that same act will not be a felony. Well, people who perform that act in the future aren't so bad. They're just, you know, just normal, not-so-good people. But they're not the kind of a person who's willing to commit a felony that, you know, puts him away for 10 years. It seems to me that that's what the Federal law is looking to. We're not giving over to the States the decision of how long we should incarcerate somebody in a Federal prison. Justice Scalia, if that were indeed what Congress wanted, then it would have written the statute differently. There would be something in that definition about the defendant, and there's not. It's about the offense. So the judgment that the State is making is about the seriousness of the offense itself. And as we made an effort to argue in our briefs, State views of drug offenses change. Scalia, I agree. It does refer to the seriousness of the offense, but it refers to the seriousness of the offense at the time the offense was committed in order to determine how bad a fellow this is. Not because we want the States to determine how long we're going to keep Federal prisoners in prison. Justice Scalia, respectfully, I don't agree with that. Respectfully. That's the issue, though, really. That is an issue, yes, Justice Scalia, but the issue is, do you look at the defendant? Do you say Congress is really talking about trying to get Mr. McNeil's any way we can, or we are interested in people who commit an offense that the State currently regards as serious? You will capture the Mr. McNeil's. You will also capture people who, you know, under the old Texas law that, you know, prescribed 99 years for someone who might have sold one or two marijuana cigarettes. Scalia, you will put away for a long time somebody who really wasn't that bad a guy. He committed a misdemeanor. And when the State later makes it a felony, he suddenly comes under ACCA. I can't believe that that's what Congress had in mind, just because the State now thinks that it's more serious. Who cares what the State thinks? We want to know how bad an actor this particular defendant is. In the case of a misdemeanor, Justice Sotomayor asked earlier about misdemeanors and felonies. There may be some additional constitutional issues in terms of whether, if it's a misdemeanor conviction, even statutory reasons, if it's a misdemeanor conviction, whether it should count. I think it works that way in the violent felony prong, for example, where the term that you look at is, was it one year? But that is not the proxy for seriousness, because there is another provision, 18 U.S.C. section 921a20, that exempts two-year misdemeanors. So the one year in the violent felony provision is not serving the same purpose that the 10 years is in the serious drug offense. A reason that Congress may have had for doing that is to say that if we were going to hit somebody with 15 years, we want to make sure that they had their constitutional rights at the time they sustained the predicate conviction, had a right to counsel, indictment, jury, and so forth. Ginsburg. I'm not sure what you're urging now. Are you modifying or retracting the answer you gave to Justice Sotomayor, that is, if it's a case where the maximum was 5 years, but then the time of the Federal offense, the State has changed it so it's 10 years, I think you answered her question that it would work the same way, that what mattered is how the State currently ranks the offense, not the offender. But now you seem to be saying there might be a different answer when the State increases rather than decreases the penalty. What I meant to say, Justice Ginsburg, is that if you are — if you continue to be talking about a felony offense, if it goes from 5 years to 10 years, it went from a felony to another felony, in that circumstance, I will concede our reading of the statute would work to the detriment of that defendant. That's correct. What I was simply trying to say about the misdemeanor felony is that there might be some additional constitutional issues that would not be present if it went from 5 years to 10 years. Kennedy. In the hypothetical where the penalties increased, would there be an ex post facto problem? Your Honor, I don't believe there would be. The defendant presumptively is on notice. That the law has changed. Now, if the increase in the penalty were between the time that he commits the 922G offense and the time of the sentencing, yes, I think you have ex post facto concerns there. I think if you are talking about between the time of the State offense and the time of the commission of the firearm offense, I don't think it raises the ex post facto concerns. Again, the defendant is on notice. He is presumed to know what the law is. At the time he commits the Federal offense, and that's what we care about here. I would also like to return to the question of retroactivity for just a moment and note that in terms of the administrability of the Armed Career Criminal Act, the question of retroactivity would introduce, if the government's reading is adopted, problems that do not exist under reading ACCA as speaking in the present tense. Under the government's approach, it is not simply that you can look at what the sentence was that the defendant received in State court. The government says retroactivity matters. So you would still have to go to the present penalty, and then you would have to were any of them retroactive, were they retroactive for a certain period of time, et cetera. So it, yes. Sotomayor, I'm sorry, how do you see that? I thought the government had two alternative positions, the first being that you look at the time, at the time of the offense, at the conviction, or alternatively it was arguing the way to take the position of the court below. But if you are going to use the present tense, then you look retroactively to see, then you look to see whether the State would retroactively apply the new sentence. You understood their brief differently? Your Honor, I read the brief differently, and if my reading is incorrect, I apologize. I'm sure they'll tell you. Yes, I'm sure they will. If there are no further questions, I would like to reserve the balance of my time. Thank you, Mr. Gordon. Mr. Gannon. Mr. Chief Justice, and may it please the Court. Petitioner was convicted under North Carolina law of multiple offenses subject to a 10-year maximum term of imprisonment, and he actually received 10-year sentences for his drug crimes. He now claims that those convictions are not ones for which the maximum term of imprisonment is at least 10 years for purposes of ACCA's definition of serious drug offense. That result is incorrect, because the sentencing court should consider the offense and the punishment as they were defined by the body of law under which the defendant was convicted and sentenced. This is the simplest approach, because the Court is already looking to the statute at the time of the underlying conviction in order to evaluate whether it satisfies the substantive component of the definition of a serious drug offense. And if I can start where Justice Sotomayor finished with my friend, I the — we have one footnote in the first part of our argument, footnote 5, which clarifies an issue that isn't at stake here, which is that when we say that you need to look to the time of the underlying conviction, that that includes the time of the sentencing, which could include some sentence modification proceedings. If the State had amended the law in the meantime, made it retroactively applicable, and the defendant were able to get his judgment of conviction modified, then we would not insist that he still had an offense that was subject to a 10-year maximum term of imprisonment. And we think that this approach is consistent with what the Court said in Rodriguez, where it was also evaluating the definition of a serious drug offense under ACCA and pointed us to the documents associated with the judgment of conviction. It recognizes that the relevant question here is the body of law that applied to this particular defendant in his offense. And it's the term conviction that actually points us to that in the statute. The question is what is the sentencing regime associated with the defendant's actual conviction. And the government's — Sotomayor, just to clarify your point, if there's been a modification of law that would have entitled him to a retroactive change in his sentence, although I'm not quite sure how that works, because if there's a modification, I thought it would only apply to a defendant who had committed the crime at that earlier time but was convicted at the present time. This defendant wouldn't have his sentence modified. Well, I think that this would be a highly extraordinary circumstance. There may be an instance where the State legislature has actually amended the law, made it retroactive, and said that it's applicable to people who had final convictions beforehand. Well, that's my question. Is your footnote related to that kind of individual only, or are you saying or are you accepting your adversary's argument that the circuit below got it right? You look at the is as to what the sentence would be today if this person had committed the crime. The footnote in Part A of the government's brief is not consistent with the court of appeals approach. We're saying that under our principle reading, which is that the relevant time is the time of the conviction, that that includes the sentencing associated with that conviction. And in certain unusual circumstances, that may well include a sentence modification proceeding that occurred sometime after the fact. But in any event, it's going to be a previous conviction that needs to be on the books at the time of the 922G of the statute. Sotomayor, I'm just trying to clarify whether you mean that the modification had to have occurred. Meaning that he was convicted, he got 10 years, and somewhere for some State reason that actual final judgment was amended to include 5. Yes. Or are you talking about accepting his argument that if he could apply for a change now? In we think that it has to be under the documents associated with his judgment of conviction. So it would matter that he had been successfully able to obtain modification of the judgment associated with his conviction. In those circumstances, it would be appropriate to say that the body of law that applied to his conviction was one that specified only the lower punishment. That's obviously not an issue here, because the State hasn't made any of these relevant changes retroactively applicable to any offense that was committed before the 1st of October in 1994. Is this the first time you're advancing the argument, the first part of your argument? It doesn't appear as if you did it below. Am I correct? We did not advance this below. We weren't heard on the question in the district court. The district judge adopted this argument in response to Petitioner's objection to the PSR, which had taken this position. In the court of appeals, Petitioner relied upon the Sixth Circuit's decision in Morton, and we responded essentially the way the Fourth Circuit did, which is to say the Fifth Circuit has distinguished instances like that when the Court has not — when the State has not made the intervening decrease in the sentence retroactively applicable. That's the interpretation that the Fourth Circuit adopted. But the government has made this argument before in the Second Circuit in Darden, in the Fifth Circuit in Hinojosa, in the Sixth Circuit in Morton in the 1994 decision. The government has made this lead argument that we're making today in addition to the fallback argument that the Fourth Circuit adopted here and that the Fifth Circuit adopted in Hinojosa. But I would note that the lead argument that we're making today has several advantages that make it preferable to the fallback argument, as some of them have already been brought up today. I already mentioned the fact that this is simpler because it requires the judge to just look to one time to evaluate the substantive component of the definition and the sentence component of the definition. But this also prevents the types of problems that Justice Alito addressed earlier that may arise when the State has amended the definition of the offense. If you just look to the actual offense at the time of the conviction, then you don't run into those sorts of problems. And the Fifth Circuit recognized this in its Allen decision and, therefore, ended up having to adopt what is essentially the government's lead argument here. The Sixth Circuit, which generally follows Petitioner's rule, also ended up adopting the government's lead argument in the context of a guidelines determination because it recognized that it was unwilling to assume that a conviction simply disappears when the State has modified the definitions in such a way that you can't precisely translate into current terms what the underlying offense of conviction is. The government's reading avoids that problem because it doesn't require you to recharacterize the old offense at all. It just says what was he convicted of, what was the maximum sentence associated with that offense at the time he was actually prosecuted. There's nothing hypothetical about it. And as the Court pointed out in Rodriguez, we would expect a lot of the documents associated with the judgment of conviction to make this a relatively easy inquiry to answer what was the maximum sentence at the relevant time. This reading also avoids the difficulty that Justice Sotomayor pointed out that is associated with later increases in the sentence. Under the government's view, if you committed an offense at a time when it was subject to a 10-year punishment, Congress has reasonably assumed that you are a dangerous person. But Congress could also reasonably assume that there's a distinction between somebody who commits an offense at a time when it's subject to a 10-year term of imprisonment and someone else who commits that offense at a different time when it's subject to only a 30-month term of imprisonment. And so under North Carolina law, for instance, the felony of manufacture of methamphetamine went from being a Class H felony, which is subject to a 30-year maximum term of imprisonment, to being a Class C felony, excuse me, a 30-month maximum term of imprisonment, to a Class C maximum term of imprisonment on December 1, 2004. And we think it's reasonable for Congress to assume that somebody who committed the crime of manufacturing methamphetamine in North Carolina at a time when it was subject to a 30-month maximum sentence is not as dangerous as somebody who is willing to commit the same offense at a time when it was subject to a 19-year maximum term of imprisonment. And the government's approach, by requiring the Court to look to the time of the underlying conviction and sentencing, unifies the inquiry across both components of the definition of serious drug offense and the definition of violent felony that Justice Kagan alluded to in the earlier part of the argument, that the definition of violent felony includes present-tense references to whether a crime is burglary. The question of whether it is punishable by a term exceeding 12 months, which is necessary to establish that it's a felony, is one that we believe needs to be made at the time of the underlying conviction. Alito What if a legislature decreases the penalty because it really has taken a new look at the nature of the offense and has come to the conclusion that this really is not nearly as serious as we previously thought? So why should the prior judgment about the severity of the offense be taken into account under ACCA? Well, Congress has given us a very objective and simple yardstick to look to, and that's just what the maximum term of imprisonment is. And if the State actually thinks that the previous offenses that were committed were less serious, then it could make the decreased maximum term of imprisonment retroactively applicable if it wanted to demonstrate that it really thought that those were mistakes. But that's not the approach that South Carolina has taken and that North Carolina has taken here. It has said that for crimes that were committed before October 1, 1994, the prior sentencing regime still applies. And as the Chief Justice pointed out before, the State has not repudiated the judgment that these were serious offenses, not only with respect to when they were committed, but the entire shift to structured sentencing, Petitioner acknowledges, wasn't intended. But what if they had repudiated their prior normative judgment? And what if they even had made it retro, made the new sentence retroactive, but a particular defendant was no longer in prison, so it wasn't on parole, so there was nothing, there was no way that this could have any effect on that person? Well, it's possible that the State could provide a mechanism by which he could have the documents associated with his prior judgment amended to reflect the fact that he ought not to have been subjected to the greater term of imprisonment. I think that that's probably the hardest case. Somebody who once upon a time actually, like this Petitioner, did a 10-year term of imprisonment for this sentence. The State, in retrospect, concludes that the offense had not been that serious even at the time, and if he had been prosecuted today, he should have received only a 5-year maximum term of imprisonment. I think that that's an instance where it might be difficult to find a way in the statute to say that ACCA doesn't apply to him, that he did not have a previous conviction at the relevant point in time. I'm not sure it's so hard. I could find my way clear to saying that if it has been retroactively made a lesser offense, that that would qualify under the statute. I don't know why you would insist that his actual conviction be altered. Well, I think that we would obviously still prevail under an approach like that. It would be an expansion of what we proposed in footnote 5. We think that the relevant inquiry starts with the conviction, but if the Court were to ask in the context of the body of law that applies to his offensive conviction whether the State has changed its mind by doing — by altering the precise yardstick that Congress has directed the Court to look to, then I think that that would be an appropriate way to deal with it. I'm not exactly sure how you get it out of the words of the statute, but it would solve the problem for cases like this of somebody who had been unable to take advantage of a sentence modification type of proceeding. Sotomayor, can you tell us whether changes in State sentences, do the States routinely address retroactivity, or do they leave it to their general common law? Do you have any idea of what? Several States have specific saving statutes like the Federal government does in 1 U.S.C. 109. At least three States have constitutional provisions that effectively are something like a saving statute. Sometimes they have background common law principles. In any instance, these types of general provisions, except where the constitutional provisions exist, could be overcome by the State legislature in a particular statute, just as is the case with the Federal saving statute. A State legislature, if it wants to be express about the retroactive applicability of a change, would be able to do that. There may be limitations under the ex post facto clause if it's increasing the severity of punishment, but for something like a decrease, there would be fewer limitations. If there are no further questions, we would urge the Court to affirm the judgment of the Court. Thank you, Mr. Gannon. Mr. Gordon, you have 6 minutes remaining. Thank you, Mr. Chief Justice. First, the government talks about, again, the problems arising if a statute is amended and so forth. Again, I would like to analogize that to the violent felony prong of ACCA. Predicate convictions disappear. Things that were predicate convictions cease to be when this Court interprets a particular offense as not qualifying as a violent felony. Then individuals who had committed that offense, it disappears as a predicate. So it is not anomalous for that to happen. The government speaks about looking to the time of the State proceeding. It is — that approach overlooks that changes to drug laws very well could reflect a normative judgment on the basis of the legislature. And the question is whether, in the way it wrote the statute, Congress wanted to defer to those State judgments. Texas and New York changed their sentencing laws because they judged them to have been too harsh, that they treated as more serious offenses than those offenses actually were. We see that today with the issue of crack cocaine. And under the government's reading, individuals may be hit with an ACCA mandatory minimum on the basis of crack conviction sustained at a time when, you know, the view of crack is very, very different from what it is now. So we think that is an important consideration as well. The question of retroactivity, again, as we have argued in our brief, it does not — the Savings Clause in North Carolina was a general savings clause that applied to every single offense in the State. It was not a reflection of the legislature's judgment of seriousness. And if I may end on a point that I made earlier, the question for this Court really is when do you want to treat two individuals, when do you want to look at them? Do you want to look at them at the time of the Federal offense, or do you want to look at them in terms of their prior State convictions and come to a conclusion that although they did exactly the same thing in the State court, one committed a serious drug offense, one did not? We think that is an absurd result. It's not a fair result. And we would ask the Court to reverse the judgment of the Fourth Circuit. Thank you very much. Thank you, counsel. The case is submitted.